# MARI HERMANOS
*v.*
# MUNICIPALITY OF SAN GERMAN.

BILL FOR INJUNCTION—PUBLIC ROADS—MUNICIPALITIES—EQUITY PLEAD-
ING—LACHES—REMEDY AT LAW.

1. An injunction to prevent an act should not be granted when the act
   has already been done. An injunction against a public corporate body
   which no longer has control of a road, its control by law having passed
   to another corporate body, to restrain the former from doing acts as
   to it, will not lie, as it would be of no avail.
2. Each case of laches is governed by its own circumstances; but a court
   of equity will not aid a litigant who has not exercised reasonable
   diligence.
3. When there is a complete and adequate remedy at law, equity will not
   interfere.

March 14, 1904.

*Mr. F. H. Dexter* for complainants.

*Messrs. Horton & Cornwell* for defendant.

HOLT, Judge, delivered the following opinion:

The complainants, Marí Brothers, are the owners of a plan-
tation of about 281 cuerdas, known as "Desideria," in the mu-
nicipal district of San German, but outside of the limits of said
town. It lies between two roads, each leading from the town of
San German to Maricao. It is conceded there are three roads,

Mari Hermanos v. San German.

or what may be more properly termed "bridle paths," but yet public pass ways, crossing said land and connecting said two lateral roads. It is claimed by the defendant, the municipality of San German, that there is another public road crossing said land and connecting said two lateral roads; that this road has been in existence, well known and recognized for a century, and is a public highway, at least by prescription. Upon the other hand, the complainants say that it has been merely a footpath, used by residents of the immediate locality.

It appears that in July, 1901, the complainants closed this alleged road by putting a wire fence across it. Soon thereafter some of the local residents petitioned the municipality of San German to compel the complainants to remove it. The council appointed a commission to report whether it was a public highway, and should be left free for public use. The commission reported affirmatively; and it being the duty of the municipal council, by the local law, to preserve public rights and property, it resolved that the complainants must open it, as from the evidence before it, and the report of the commission, it was evidently a public highway by prescription at least, and had been one from time immemorial. The complainants asked of the council a rehearing, and claimed that the road had ceased to exist from nonuser. The council appointed two more commissions; the testimony of over forty witnesses was taken, some of whom had known the road for sixty years; one commission personally inspected the locality; and the council finally resolved as at first, and again ordered its removal, of which the complainants were notified. The latter appealed to the insular government, and it affirmed the action of the municipality.

The complainants failing to remove the fence, the municipality ordered its proper officer to do so; and it appears to have been done about August or September, 1901, since which time

Marí Hermanos v. San German.

the public has been using the way more or less. This bill was filed on January 7th, 1904, averring that the defendant is seeking to open the road, and by its agents is interfering with the use of said land by the complainants; has entered upon same, and is threatening to continue to do so to their damage of not less than $10,000. The only purpose of the bill is to enjoin them from so doing; and the case is now submitted upon the part of complainants for a temporary injunction, and upon the part of the defendant, upon a demurrer to the bill. The defendant, in support of his demurrer, relies upon a want of equity in the bill; that they have an adequate remedy at law, and various other grounds.

Many affidavits pro and con have been submitted. One can scarcely conceive of evidence more conflicting. Some of them support the complainants' claim that the road is entirely unnecessary to the public; that from its location it is unfit for a road; that it is mainly grown up in scrub bushes, and in other places covered by bananas and coffee; that it is traveled but very little, and this by the immediate local residents; and that the complainants were never properly notified of any proceeding to open it, never consented to it, and never received any compensation therefor.

Upon the other hand it is shown that the road has been quite public; was so before the complainants became the owners of the land; much traveled for sixty years or more; that the banana and coffee plants along it have been planted by the complainants since they bought the land; that they purchased it at different times from 1887 to 1899 in small parcels, from many different owners, and made one contiguous estate of it; that its use is necessary to the public to go into the main road leading to Maricao and to get water from a certain river; that its closing would inconvenience the public generally, and there is some

Marî Hermanos v. San German.

showing that the land was purchased by the complainants subject to this use.

Objection is made to the evidence as to the action of the council. It is composed only of the original record before it, and is not otherwise certified. Conceding the objection well taken, yet the bill and the numerous affidavits plainly show that the object of the suit is to prevent the opening and use of a road which had been opened long prior to the bringing of it.

It was opened about August or September, 1901. This action was not brought until January 7th, 1904. In the meantime, to wit, in January, 1903, the road passed from under the control of the defendant and into the control of an entirely different corporate body, to wit, one created by the legislature and known as the Board of Road Supervisors of the Mayaguez District; and since then the defendant and its officers have had nothing to do with it. All threatened or attempted to be done or done by them was prior to that date. An attempt is made to account for this delay, in not being able to obtain certain *data* necessary to the bringing of the suit; but this explanation is not sufficient to excuse it. What the defendant had done was open, public, and well known to the complainants. An injunction to prevent an act should not, of course, be granted when the act has already been done. It would be idle and useless. Moreover, an injunction against the defendant would be of no avail, as it, by law, no longer has control of the road. Aside, therefore, from the merits of the case, an injunction should not be granted because of the laches of the complainants in suing, and because, owing to the change of control, the remedy sought would be unavailing.

Each case of laches must, of course, be governed by its own circumstances; but a court of equity will not aid the application of one who has not exercised reasonable diligence, and

presents a demand which, under all the circumstances, should in good conscience have been presented before. The peace of society demands that such a demand be disregarded; and especially would a court not use its injunctive power in such a case. Gardner v. Stroever, 81 Cal. 148, 6 L. R. A. 90, 22 Pac. 483.

In addition to the above it is shown that the defendant is entirely solvent, and able to respond to any judgment at law that the complainants are likely to obtain. Inconvenience to the public is to be regarded, as well as individual right; and the complainants are not entitled to an injunction after having slept upon their alleged rights until the control of the matter in question has by law passed out of the defendant and into another governing body created by law.

The case is not one calling for equitable interference, and the demurrer is sustained and bill dismissed at the costs of the complainants.